## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| In re | Case No. 05-02143 |
| PAUL ANTHONY GOUVEIA, | Chapter 7 |
| Debtor. | |
| | Adv. Pro. No. 05-90151 |
| PAUL ANTHONY GOUVEIA, | |
| Plaintiff, | |
| vs. | |
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION, | |
| Defendants. | |

## **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The trial in this adversary proceeding was held on September 25, 2006. Michael A. Glenn represented Debtor/Plaintiff Paul Anthony Gouveia. Theodore D. C. Young represented Defendant Educational Credit Management Corporation ("ECMC").

Based on the parties' stipulations and the evidence presented at trial, the court makes the following:

05-02143 GOUVEIA FOFCOL.wpd

## FINDINGS OF FACT

1. Mr. Gouveia filed this adversary proceeding to determine discargeability of his student loans debt under 11 U.S.C. § 523(a)(8). Mr. Gouveia seeks a discharge of his educational student loans, which are evidenced by educational student loan promissory notes that are presently held by ECMC (the "Notes"). The student loans were made to Mr. Gouveia under a program funded by a governmental unit under the Federal Family Educational Loan Program (formerly known as the Guaranteed Student Loan Program). The Notes were guaranteed by the United Student Aids Fund ("USAF"). In or about November 1996, Mr. Gouveia sought and was granted a consolidated student loan with ECMC's predecessor in interest. Under the terms of the consolidated loan, Mr. Gouveia agreed to monthly payments in the amount of $371.62 with repayment to begin in January 1997, over a term of twenty years. Interest was to accrue at 8.00% per annum. All rights, title, and interest in the Notes were transferred by USAF to ECMC. ECMC is the legal holder of the Notes and Mr. Gouveia is now obligated to ECMC.

2. The total principal and interest balance owed by Mr. Gouveia to ECMC is $52,020.89 (as of September 18, 2006). This amount includes $49,055.29 in principal and $2,985.37 in unpaid interest. Interest continues to

U.S. Bankruptcy Court - Hawaii   #05-90151   Dkt # 27   Filed  09/29/06   Page 2 of 14

accrue at $10.75 per diem or 8% per annum.  Prior to the filing of his chapter 7 petition, Mr. Gouveia made eleven payments on his student loans; these payments totaled $2,392.77.  One payment was made in December 1991.  Four payments were made in 1997; two payments were made in 1998 and four payments were made in 2000.  His last monthly payment was made in or about April 2000.  Mr. Gouveia has not made any student loan payments since the filing of his petition. .

3. Mr. Gouveia is 52 years old.  He is single, has never been married, and has no dependents. He was born and raised in Hawaii.   He matriculated in the University of Michigan in the fall of 1972, but withdrew after one semester.  He then attended the University of Hawaii at Manoa between January 1973 and July 1973 and then withdrew.

4. After his first stint in college ended in 1973, Mr. Gouveia held restaurant jobs.  He became a licensed massage therapist and worked in that profession until he moved to Maui in 1998.  He also worked as a host in a restaurant for part of this time to supplement his income.  He made as much as $36,000 per year during this period.

5. In 1998, Mr. Gouveia moved to Maui to help his aged parents.  Between August 1988 and May 1990, he attended Maui Community College and

U.S. Bankruptcy Court - Hawaii   #05-90151   Dkt # 27   Filed  09/29/06   Page 3 of 14

then transferred to the University of Hawaii at Manoa. No student loans were used to fund any of the foregoing studies.

6. Between August 1990 and July 1995, Mr. Gouveia attended the University of Hawaii at Manoa, earning a B.A. in Asian Studies, with distinction (3.96 cumulative GPA). The student loans at issue in this matter were used during this time period at the University of Hawaii.

7. After graduating from college, Mr. Gouveia worked as a salesperson at Louis Vuitton. He worked hard but was not particularly successful because most of the customers were Japanese nationals and his Japanese language skills were insufficient.[1] He then moved to Tokyo and worked as an English teacher for four years. He returned to Hawaii because he found living in Tokyo too stressful and he wanted to help his elderly parents. He obtained a retail sales job but was unable to earn enough.

8. Mr. Gouveia is presently employed as a teacher (English as a second language) at the Academia Language School ("Academia") in Honolulu, Hawaii. He has been employed at Academia since February 2001, with breaks in employment between July 2003-October 2003, March 2005, and April 2005. He

---

[1] The stipulated facts state that Mr. Gouveia is bilingual in Japanese and English. At trial, however, Mr. Gouveia testified that he is not fluent in Japanese and that his skills do not rise to the conversational level, even though he lived and worked in Japan for over four years.

U.S. Bankruptcy Court - Hawaii  #05-90151  Dkt # 27  Filed 09/29/06  Page 4 of 14

currently teaches for approximately thirty hours per week (not including class preparation and grading time). He is paid $17 per hour and his average gross salary is about $2,100 per month.

   9. In 2003, Mr. Gouveia traveled to Tokyo in search of a job. He used credit cards to finance the trip. He did not find a suitable position, so he returned to work at Academia in Honolulu. Shortly thereafter, he stopped using credit cards

   10. In or about October 2004, Mr. Gouveia received about $22,400 as one-time payment from his parents' trust after his parents passed away. Mr. Gouveia deposited about $7,000 of the money in an IRA and used the rest to pay for another trip to Japan to seek work.

   11. In 2005, Mr. Gouveia traveled to Fukuoka, Japan, in search of a job. He found a job but became ill and decided to return to Hawaii and his job at Academia.

   12. Mr. Gouveia's adjusted gross income between 2001 and 2005 was as follows:

    2001:  $16,533

    2002:  $27,197

    2003:  $17,934

U.S. Bankruptcy Court - Hawaii  #05-90151  Dkt # 27  Filed 09/29/06  Page 5 of 14

    2004: $22,587

    2005: $17,795

He also received combined federal and state tax refunds of $1,092 in 2000, $515 in 2002, $1,088 in 2003, $1,476 in 2004, and $803 in 2005.  In his interrogatory responses dated March 2006, Mr. Gouveia stated that he expected income of over $26,000 during the next 12 months.  This expectation appears reasonable; although Mr. Gouveia's income in some recent years has been significantly lower, that occurred because he took time off to seek better work in Japan.  Based on his paystubs and prior tax returns, his takehome pay will be approximately $1,600 to $1,750 per month.

    13. The 2005 poverty guideline, published by the U.S. Department of Health and Human Services, for a family of one in Hawaii was $11,010.  Mr. Gouveia's expected annual income is more than twice the poverty guideline.

    14. Mr. Gouveia has looked for better paying jobs within his occupation.  He believes that he could find a job with a higher hourly wage, but the hours would be irregular and the employer would not provide health insurance, so his net pay would be lower.  His job search in Japan was not successful, and any increase in his income in Japan would likely be more than offset by increased living expenses.  He is also willing to live in the San Francisco area but fears that

6       05-02143 GOUVEIA FOFCOL.wpd

U.S. Bankruptcy Court - Hawaii   #05-90151   Dkt # 27   Filed 09/29/06   Page 6 of 14

the cost of living would consume any additional income he might earn.

15. Mr. Gouveia testified that he does not work more hours at Academia because he finds teaching exhausting and he lacks the energy to work more. He has thought about tutoring private students but does not know how to contact prospective students and is not sure that he is free to do so under his arrangement with Academia.

16. Mr. Gouveia's chapter 7 bankruptcy schedules show monthly expenses of about $1,416, which includes rent in the amount of $550 (a very low housing expense for Honolulu) and food expenses of about $500. Mr. Gouveia would like to rent another apartment because his current home is hot and uncomfortable, but he cannot afford to do so. Mr. Gouveia does not own a motor vehicle and cannot afford one. His expenses are frugal and his lifestyle is minimal.

17. Mr. Gouveia does not own any real property. He has no savings apart from about $4,000 in his IRA and owns no other material assets. (He made a withdrawal from his IRA to pay his attorney for his bankruptcy case and this adversary proceeding.)

18. In his interrogatory answers and in the stipulated facts, Mr. Gouveia stated that he has no mental or physical conditions. At trial, however, Mr. Gouveia testified that he suffers from depression and that his knees are painful. He

U.S. Bankruptcy Court - Hawaii   #05-90151   Dkt # 27   Filed 09/29/06   Page 7 of 14

testified that his depression did not respond to medication but was mitigated by therapy.  He also testified that his depression has improved since his debts (other than the Notes) were discharged in bankruptcy, thus reducing his financial stress.  Mr. Gouveia testified that his knees make it difficult for him to climb stairs and slopes and to stand for long periods, and that a doctor told him that he will eventually need knee replacement surgery.

19.     After this adversary proceeding was filed, ECMC informed Mr. Gouveia (through his counsel) that he might be eligible for a loan consolidation repayment program called the William D. Ford Direct Consolidation Loan Program ("Ford Program"), which allows the borrower several flexible repayment packages.  One of these repayment plans is called the Income Contingent Repayment Plan ("ICRP"), which calculates repayment amounts based upon an annual review of the borrower's adjusted gross income.  In Mr. Gouveia's case, the initial payments would have been approximately $193 per month, with repayment to occur over a maximum period of 25 years.  At the end of that time period, any amounts still owing would be forgiven.   If his income were to drop during the repayment period,  the monthly payment would be adjusted pursuant to a formula set forth under the ICRP that allows for monthly payments to be as low as zero, under certain circumstances.  Mr. Gouveia refused to consider loan consolidation under

U.S. Bankruptcy Court - Hawaii   #05-90151   Dkt # 27   Filed  09/29/06   Page 8 of 14

the Ford Program or the ICRP because he had already paid his attorney to conduct this adversary proceeding.

20. Prior to the filing of his bankruptcy petition, Mr. Gouveia sought and was granted forbearances/deferment on his student loan payments, dating back to late 1995, when he graduated from the University of Hawaii. Forbearance/deferment requests were made in or about May 1995, November 1995, September 1996, January 1997, April 1997, October 1997, June 1998, November 1998, May 2000, October 2000, April 2001, May 2001, November 2001, December 2001, December 2002, June 2003, February 2004, August 2004 and February 2005. He also asked for reduced monthly payments (in the amount of $20/month) in or about October 2004, November 2004, December 2004, and January 2005.

Based on these findings of fact, the court makes the following:

**CONCLUSIONS OF LAW**

1. Section 523(a)(8) provides that:

A discharge [in a chapter 7 case] . . . does not discharge an individual debtor from any debt –

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an

educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8).

2.  Mr. Gouveia's debts to ECMC are of the kind which section 523(a)(8) generally excepts from the discharge.

3.  In order to establish undue hardship under section 523(a)(8), the debtor bears the burden of proving that: (a) the debtor cannot maintain, based on current income and expenses, a minimal standard of living for the debtor and the debtor's dependents if forced to repay the loans; (b) additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (c) the debtor has made good faith efforts to repay the loans. In re Mason, ___ F.3d ___ (9th Cir. 2006); In re Pena, 155 F.3d 1108, 1112 (9th Cir. 1998), citing In re Brunner, 831 F.2d 395 (2d Cir. 1987). The debtor's burden is stringent. The debtor must show more than merely tight finances and more than garden-variety hardship.

4.  The court can discharge a student loan obligation in part, so long as the debtor carries the burden of proving that payment of the discharged part would impose an undue hardship. In re Saxman 325 F.3d 1168 (9th Cir. 2003).

5.  The first prong of the Brunner test requires the debtor to show

U.S. Bankruptcy Court - Hawaii   #05-90151   Dkt # 27   Filed 09/29/06   Page 10 of 14

that, based on the debtor's current income[2] and expenses, the debtor cannot maintain a minimal standard of living if required to pay the student loan debts. Mr. Gouveia has not made this showing. Based upon his current income and his minimal living expenses, Mr. Gouveia has some income ($185 to $335 per month) which he could use to pay the student loan debts while maintaining a minimal standard of living.

      6.    Mr. Gouveia wants to acquire a car and move to a more comfortable apartment. His desire is understandable, but for purposes of the Brunner test, the only expenses which are considered are those which are necessary to maintain a minimal standard of living. Mr. Gouveia has lived in his apartment and without a car for several years; considering all of his circumstances, his current apartment and use of public transportation are adequate to a minimal standard of living.

      7.    The second prong of the Brunner test requires the debtor to show "circumstances enabling the court to predict the longevity of the financial hardship, on a case-by-case basis." In re Nys, 308 B. R. 436, 443 (B.A.P. 9th Cir. 2004), aff'd, 446 F.3d 938 (9th Cir. 2006). The court must determine whether the

---

[2] The first prong of the Brunner test considers the debtor's current income. The debtor's ability to increase income should be considered under the third prong of the Brunner test. Mason, ___ F.3d at ___ n.3; In re Birrane, 287 B.R. 490, 496 n.5 (B.A.P. 9th Cir. 2002).

U.S. Bankruptcy Court - Hawaii   #05-90151   Dkt # 27   Filed 09/29/06   Page 11 of 14

debtor faces any insurmountable barriers to financial recovery which will prevent the debtor from repaying the student loans for several years. These barriers may include (among others) serious mental or physical disability of the debtor or the debtor's dependents which prevents employment or advancement; the debtor's obligations to care for dependents; lack of, or severely limited education; poor quality of education; lack of usable or marketable job skills; underemployment; maximized income potential in the chosen educational field, and no other more lucrative job skills; limited number of years remaining in work life to allow payment of the loan; age or other factors that prevent retraining or relocation as a means for payment of the loan; lack of assets, whether or not exempt, which could be used to pay the loan; potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets and/or likely increases in the debtor's income; and lack of better financial options elsewhere. Id. at 446-47. The court must also consider the debtor's future prospects for employment. Id. at 444.

8. Mr. Gouveia has failed to carry his burden of proof on the second prong of the Brunner test. He could improve his financial condition by working more hours at Academia. This is undoubtedly a barrier, but it is not an "insurmountable" barrier. Similarly, Mr. Gouveia's depression and knee problems are not so severe that they would preclude him from maintaining or improving his

U.S. Bankruptcy Court - Hawaii   #05-90151   Dkt # 27   Filed 09/29/06   Page 12 of 14

current financial condition.

9. Mr. Gouveia has also failed to carry his burden of proof on the third prong of the Brunner test. The "good faith" test requires the debtor to show that the debtor has made appropriate efforts to repay the loan by maximizing income and minimizing expenses and to negotiate an affordable repayment plan. Id. at 499.

10. The debtor's inability to repay the student loans must result from factors beyond the debtor's reasonable control, and not the debtor's own willfulness or negligence. "Declining to obtain additional work is not a factor beyond [the debtor's] reasonable control." Id. at 500. By accepting additional teaching hours, Mr. Gouveia could earn enough to make payments on the student loans. His decision not to do so means that he has not made a "good faith" effort to repay his student loan debts (as Brunner and its progeny define "good faith").

11. Mr. Gouveia's refusal to consider the ICRP, based on the fact that he had already paid his attorney to handle his case, also weighs against a finding of good faith. Mason, ___ F.3d at ___.

12. Mr. Gouveia's situation is sympathetic. It is painful to deny relief to an honest person who is leading a prudent life. But Congress has set a rigorous standard for discharging student loans and the appellate courts have

U.S. Bankruptcy Court - Hawaii    #05-90151    Dkt # 27    Filed 09/29/06    Page 13 of 14

enforced that standard with equal rigor. See Mason, passim. I am constrained to follow the statute and the binding precedent interpreting it.

   13. The defendant is entitled to judgment against the plaintiff determining that plaintiff's debts to the defendant are not dischargeable.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: **09/29/2006**

U.S. Bankruptcy Court - Hawaii #05-90151 Dkt # 27 Filed 09/29/06 Page 14 of 14